JOURNAL ENTRY AND OPINION.
{¶ 1} This is an appeal from a judgment convicting appellant of aggravated robbery with a firearms specification, grand theft with a firearms specification, carrying a concealed weapon, possession of criminal tools, and having a weapon while under disability. In the brief filed by his current counsel,[1] appellant contends that he was denied the effective assistance of counsel when his attorney failed to file a motion to suppress evidence and failed to challenge identification testimony which was tainted by an unnecessarily suggestive identification procedure. He also argues that the court denied him a fair trial by allowing the jury to ask questions of the witnesses. We find no error in the proceedings below, so we affirm.
 PROCEDURAL HISTORY {¶ 2} Appellant was charged in five counts of a six-count indictment filed August 16, 2001. He was charged with aggravated robbery with firearms specifications, grand theft with firearms specifications, carrying a concealed weapon, having a weapon while under disability, and possession of criminal tools. The charge of having a weapon while under disability was severed and tried to the court; the remaining charges were tried to a jury beginning on October 15, 2001.
 {¶ 3} At the conclusion of the trial, the jury found appellant guilty of all four of the charges tried to it, including the firearms specifications attached to the aggravated robbery and grand theft charges; the court found appellant guilty of having a weapon while under disability. The court sentenced appellant to three years' imprisonment on the firearms specification, to run prior and consecutive to the sentence of eight years' imprisonment for aggravated robbery. The court then required appellant to serve one year of imprisonment on each of the remaining counts. The sentence for carrying a concealed weapon was made consecutive to the sentence for aggravated robbery; the remaining sentences were to run concurrently. The firearms specifications for the grand theft charge were merged with those on the aggravated robbery charge.
 {¶ 4} At trial, the state presented the testimony of the victim, Derrick Dillard, as well as the testimony of several investigating police officers. Dillard testified that he and his wife were arguing on the evening of July 22, 2001. At approximately 1:00 a.m., he left and went to the American Pride Car Wash, a self-serve car wash at East 91st Street and Union Avenue in Cleveland, Ohio. He placed his car, a 1992 Buick Roadmaster, in the middle one of three bays and went to get change. Another car pulled into the first bay. Dillard returned to the middle bay and was about to insert change into the machine when he saw a man standing in front of the bay. He felt something was wrong, so he proceeded toward the driver's side door of his car. The man pulled out a gun and pointed it at Dillard. The man then approached Dillard and told Dillard to give him money. Dillard emptied his two pockets and gave the contents to the man. A second man entered the bay and demanded Dillard's car keys, which Dillard gave to him. The second man had come from the direction of the first bay. The man with the gun then told Dillard to run, which Dillard did, running toward a nearby house.
 {¶ 5} A man and woman outside the house gave Dillard change, which he used to call his mother. He saw the two robbers pull his car out of the car wash and turn east; a green Ford Explorer, license number FLV-4EVR, also pulled out and turned west.
 {¶ 6} Dillard's mother took him to the police station, where he made a report, then he went home. At approximately 6:00 a.m., his mother called to tell him that his car had been recovered. He met with police officers, who asked him to identify men in the back of a police car. He identified these men as the persons who had robbed him. He identified appellant as the man with the gun. He said that he identified the men by their faces.
 {¶ 7} Cleveland Police Officers Todd Kilbane and John Lundy testified that they were touring the area of East 40th Street and Woodland in response to a report of shots fired in that area. As they were traveling westbound, they saw a Buick Roadmaster traveling eastbound in a parking lot next to Longwood Estates. This vehicle matched the description of a car which had been reported stolen at gunpoint in a broadcast they had received earlier in their patrol. Lundy radioed for assistance, and they then drove to a bank parking lot nearby to observe the vehicle while they waited for back-up.
 {¶ 8} Officers Kilbane and Lundy saw two black males exit the vehicle and walk around nearby. After five to ten minutes, when assistance arrived, the police officers left their zone car and entered the building. In the hallway, they encountered one of the men they had been observing, whom they identified at trial as the appellant. Appellant said he was visiting there. He had no identification. The police officers then patted him down for safety and found a set of keys and a pair of black leather gloves. They knocked on the door where appellant was supposed to be visiting, but no one there knew him. They then arrested appellant. Later, Officer Lundy spoke with the victim of the robbery, and he told Lundy about the involvement of the Ford Explorer in the robbery.
 {¶ 9} Cleveland Police Officer Antonio Taylor testified that he responded to a call to assist another zone car in connection with a vehicle which had been reported stolen, a Buick. Both the Buick and a green Ford Explorer were parked in a lot on Woodland Avenue next to Longwood Estates. Officer Taylor reported that the Explorer was impounded and he conducted an inventory search of it. He found a loaded black semi-automatic handgun in the course of his search. The keys to the Explorer were recovered from appellant. The gun was not registered to appellant. Cleveland Police Sergeant Louis Knowles testified that the Explorer was registered to a female whom the co-defendant identified as appellant's girlfriend. Appellant reportedly told Knowles that he had been dropped off at the scene and did not know anything about either the Explorer or the Roadmaster.
 LAW AND ANALYSIS {¶ 10} Appellant's first two assignments of error both claim he received ineffective assistance of counsel at trial, so we will address these assignments together. The test for determining whether counsel was constitutionally ineffective is essentially the same under both Ohio and federal law:
 {¶ 11} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687; see, also, State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 12} First, appellant argues that he received ineffective assistance of counsel because his attorney did not move to suppress the gun which was recovered from the search of the Explorer. Appellant cannot demonstrate that he was prejudiced by his attorney's failure to move to suppress the gun, because he did not have standing to challenge the search of the Explorer. In order for a defendant to demonstrate that a search violated his or her fourth amendment rights, he or she must prove a legitimate expectation of privacy in the area searched. An individual in lawful possession of a vehicle may have a legitimate expectation of privacy in it even if he or she does not own the vehicle, if he or she can show that the owner gave permission to use it. State v. Carter (1994),69 Ohio St.3d 57, 62-63. In this case, though, the evidence at trial showed that the Explorer was registered to a female; appellant denied that it was his and denied any knowledge of it. His disclaimer of any interest in the vehicle shows that he lacked standing to challenge the search of the Explorer. "The mere possession of the keys to the vehicle, taken together with the [appellant's] repeated testimony that he did not own the vehicle, does not demonstrate a sufficient possessory interest in the vehicle or a reasonable expectation of privacy." State v. Robinson
(July 12, 2001), Cuyahoga App. No. 77981. Appellant's claim of ineffective assistance of counsel fails because appellant could not have been prejudiced by his attorney's failure to file a motion to suppress the gun. Therefore, we overrule the first assignment of error.
 {¶ 13} Second, appellant urges that his attorney provided ineffective assistance by failing to challenge the identification procedures used by the police. Once again, however, appellant cannot show that he was prejudiced by his attorney's failure to move to suppress the identification testimony.
 {¶ 14} The Supreme Court has held that constitutional due process may not be offended by the use of a "show-up" identification procedure (such as that used here) as opposed to a line-up, if the totality of the circumstances indicate that the identification is reliable even though the procedure was suggestive. Factors to consider include the witness' opportunity to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' description of the criminal; the certainty of the witness at the confrontation; and the length of time between the crime and the confrontation. Neil v. Biggers
(1972), 409 U.S. 188; also see State v. Martin (1998), 127 Ohio App.3d 272.
 {¶ 15} Here, the victim had a substantial opportunity to view his assailants at close range in a well-lit car wash bay for approximately 10 minutes. He told the police that his assailants were two black males, one of whom (the gunman) was 5 feet seven inches tall, 185 pounds, in his mid-twenties, wearing blue jeans and a white shirt. The other assailant wore black jeans and a white shirt. The record does not disclose how accurate these descriptions were. The victim identified the assailants only a few hours later when they were in police custody. At trial, he indicated that his identification of the suspects was based on his memory of their faces. Appellant has not demonstrated that, had his attorney moved to suppress the identification testimony, the trial court would have excluded it as unreliable, under the totality of the circumstances. Therefore, appellant has not demonstrated that he was prejudiced by his attorney's failure to move to suppress this testimony. Accordingly, we overrule the second assignment of error.
 {¶ 16} Finally, appellant argues that he was denied his right to a fair and impartial jury when the court permitted the jurors to ask questions of the witnesses. Throughout the trial, at the conclusion of each witness' testimony, the court allowed the jurors to submit written questions for the witness. The court reviewed those questions with counsel and asked those questions which it found to be appropriate. Appellant contends this procedure denied him a fair trial, because it made the jurors active participants in the trial and advocates rather than the neutral factfinders they were supposed to be.
 {¶ 17} A conflict exists among the Ohio appellate courts on this issue. The matter is currently pending before the Ohio Supreme Court inState v. Fisher (2002), 94 Ohio St.3d 1484. This district has consistently held that it is within the sound discretion of the trial court to allow jurors to question witnesses at trial. State v. Fallat, Cuyahoga App. No. 81073, 2003 Ohio 169; State v. Richards, Cuyahoga App. No. 79350, 2002 Ohio 6623; State v. Belfoure, Cuyahoga App. No. 80159, 2002 Ohio 2959; State v. Sheppard (1955), 100 Ohio App. 345. These cases have found that a trial court did not abuse its discretion by following the procedure followed by the trial court here. Likewise, we find no abuse of discretion here. Accordingly, we overrule the third assignment of error.
Judgment affirmed.
PATRICIA A. BLACKMON, J. and DIANE KARPINSKI, J. concur.
[1] Assignments of error and a brief were filed on appellant's behalf by the Cuyahoga County Public Defender, to which the state responded. When retained counsel subsequently entered an appearance on appellant's behalf, he disavowed reliance on the public defender's brief and was granted an extension of time to file new assignments of error and another brief. The state has since responded to retained counsel's new assignments of error. Accordingly, we now strike the brief filed by the public defender and the state's brief in opposition to it.